UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:10CR439-2 |
| | ) | 1:12CV837 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION & |
| | ) | ORDER |
| | ) | |
| DAPHNE STOKES, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is a *pro se* motion by defendant Daphne Stokes to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 179). The government opposes the motion (Doc. No. 189), and Stokes has filed a reply (Doc. No. 193, styled "Traverse"). Alternatively, Stokes requests a compassionate release (Doc. No. 213). The Court construes this alternative motion as a request for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1), and the government opposes any such reduction. (Doc. No. 223.) Finally, Stokes seeks an amendment to the court-ordered restitution (Doc. No. 214), and the government opposes this motion as well (Doc. No. 223).

### I.  BACKGROUND

Defendant Stokes was one of three defendants named in a 29-count indictment charging conspiracy, wire fraud, and related crimes. The charges arise out of a series of financial transactions, taking place between October 2006 and February 2007, involving property in Cuyahoga County, Ohio. Defendant Louis Amir owned and

operated several companies, including Illuminati Funding Corporation, and orchestrated a scheme to defraud several mortgage companies out of loan proceeds totaling in excess of 6.7 million dollars to finance the purchase of real and other property. Defendant Deirdre Ferguson was the owner of a title agency and used her position with the title agency to facilitate the fraudulent loans. Defendant Stokes was an employee of Illuminati Funding Corporation, and she assisted Amir in submitting falsified loan applications to various lending institutions. By the indictment, dated October 14, 2010, Stokes was charged with conspiracy, in violation of 18 U.S.C. § 371; six counts of wire fraud, in violation of 18 U.S.C. § 1343 and 2; thirteen counts of money laundering, in violation of 18 U.S.C. § 1957 and 2; three counts of making false declarations in bankruptcy, in violation of 18 U.S.C. § 152(3); one count of theft of government funds, in violation of 18 U.S.C. § 641; three counts of making false statements, in violation of 18 U.S.C. § 1001(a)(3); and one count of misuse of a social security number, in violation of 42 U.S.C. § 408(a)(7)(B). The last four categories of charges related to a separate scheme to utilize the social security number of another to misappropriate government funds. Co-defendants Amir and Ferguson were not implicated in this second scheme.

On October 27, 2010, Stokes was arraigned on the indictment, at which time the Court appointed counsel for Stokes. On two separate occasions, Stokes moved for and received new court-appointed counsel. (Doc. No. 48; Minutes from January 25, 2011; Minutes from May 18, 2011.) Stokes eventually released her third court-appointed attorney and retained attorney Michael Drain. (Minutes from August 30, 2011.) The Court granted Stokes multiple continuances of the trial date in order to afford new

counsel the opportunity to prepare. (*See* Minutes from May 18, 2011; Doc. No. 65, Ends of Justice Continuance; Doc. No. 81, Amended Trial Order.)

On August 25, 20011, Ferguson entered into a plea agreement in which she agreed to cooperate with the government. (Doc. No. 107). On September 1, 2011—five days before trial was set to commence—defendant Stokes also entered into a plea agreement with the government, and at the plea hearing pleaded guilty to counts 1, 17, 25, and 29 of the indictment, which set forth the following charges: conspiracy, aiding and abetting money laundering, theft of government funds, and misuse of a social security number. The plea agreement included an express waiver of various appellate rights, including her right to attack her sentence via a motion under 28 U.S.C. § 2255. (Doc. No. 115, Plea Agreement, ¶ 20.) In exchange for her plea of guilty to these counts, the government agreed to dismiss counts 2-9, 22-24, and 26-28. Stokes signed the plea agreement and initialed each page to signify that she "read [the] entire plea agreement and [] discussed it with [her] attorney," and that she "under[stood] and approve[d] the provisions" of the agreement. (*Id*. at 818.)

During the hearing on Stokes's change of plea, Stokes advised the Court that she had discussed the facts of the case, the nature of the charges against her, and the plea agreement with her attorney; that she fully understood the terms of the plea agreement, including the possible sentencing guidelines calculations and appellate waiver; and that she was satisfied with the representation of her counsel. (Doc. No. 178, Change of Plea Hearing, at 1194, 1196-97, 1209-10, 1213-1219.) After discussing each paragraph of the plea agreement with Stokes, the Court found Stokes to be "fully competent and capable of entering an informed plea, that [her] plea of guilty [was] a

3

knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense to which [she had] pleaded guilty." (*Id*. at 1232.)

Defendant Amir went to trial, and Ferguson testified against Amir. Notwithstanding the fact that Stokes's plea agreement provided that, in addition to the two-level reduction for acceptance of responsibility pursuant to §3E1.1(a) of the sentencing guidelines, the government would request an additional one-level reduction for acceptance of responsibility pursuant to §3E1.1(b) if she testified at Amir's at trial (Stokes Plea Agreement ¶ 18), Stokes refused to testify at the trial.[1]

At the Court's request, the United States Probation Office prepared a Presentence Report (PSR) for Stokes, and submitted it to the parties. The PSR concluded that Stokes's base level of 6 was to be increased by 18 levels because the loss amount was greater than $2.5 million and less than $7 million. (PSR, ¶ 50.) The new level of 24 was then increased by one additional step because Stokes was convicted of money laundering, in violation of 18 U.S.C. § 1957, making the adjusted offense level 25. (*Id.* ¶ 51.) The report also recommended that Stokes receive a three-level reduction pursuant to §3B1.2 for her limited role in the offense, a two-level reduction pursuant to §3E1.1(a) of the sentencing guidelines for acceptance of responsibility, and further indicated that the government intended to request the additional one-level reduction for acceptance of responsibility pursuant to §3E1.1(b) of the sentencing guidelines. (*Id*. ¶¶ 53, 56-57.) These calculations would result in an offense level of 19. As the government observed in its opposition brief, the sentencing calculations in the PSR mirrored one of the possible

---

[1] On November 21, 2011, the jury returned verdicts of guilty against Amir on counts 1-21.

offense level calculations described in the plea agreement and discussed at the plea hearing. (Stokes Plea Agreement, ¶¶ 15-16; Doc. No. 178, Change of Plea Hearing, at 1207-10.)

Stokes's counsel filed objections to the PSR, specifically maintaining that the PSR overstated the amount of the loss attributable to Stokes. (Doc. No. 136.) Defense counsel also filed a sentencing memorandum, emphasizing Stokes's arguably limited role in the mortgage fraud scheme, her history of physical, sexual and emotional abuse as a child, and her former status as suicidal and a runaway at 16 years of age. (Doc. No. 138, Stokes's Sentencing Memorandum.) The memorandum concluded that under the factors to be considered at sentencing, set forth at 18 U.S.C. § 3553(a), the correct adjusted offense level should be 10. (*Id*. at 1022.)

On November 8, 2011, the Court conducted Stokes's sentence hearing. Because Stokes chose not to testify at Amir's trial, as provided in the plea agreement, the government objected to the one-level reduction recommended in the PSR for acceptance of responsibility pursuant to §3E1.1 of the sentencing guidelines. The defendant did not dispute that the reduction should not be given due to her refusal to testify, and the Court sustained this objection. (Doc. No. 177, Sentencing Hearing at 1160.)

Reiterating the arguments in Stokes's sentencing memorandum, defense counsel argued that the guidelines overestimated the loss that should be attributed to Stokes, due to her limited role in the conspiracy. The Court found, however, that attributing the entire amount of the fraud to Stokes was appropriate because, under Sixth Circuit law, each co-conspirator is responsible for the losses of all victims directly and proximately harmed by the conspiracy. (Doc. No. 177, Sentencing Hearing at 1167

5

[citing *United States v. Williams*, 612 F.3d 500 (6th Cir. 2010); *United States v. Flynn*, 265 F. App'x 434 (6th Cir. 2008)].) Nonetheless, the Court was persuaded that the full amount of loss warranted a two-level departure for overstated loss pursuant to U.S.S.G 2B1.1, Application Note 19(c), given Stokes's limited role in the conspiracy.

The Court also entertained further argument from defense counsel relating to other § 3553(a) factors, including Stokes's history of abuse and her family responsibilities. With respect to her family ties and responsibilities, the Court found that Stokes's situation did not warrant a departure under U.S.S.G. § 5H1.6. (Sentencing Hearing at 1170.)

In the end, the Court calculated the guideline sentence calculation as follows:

- The base offense level for the offense was 6.
- An 18-level increase was applied pursuant to §2B1.1(b)(1(J) of the guidelines because the loss exceeded $2,500,000.
- A one-level increase was applied pursuant to §2S1.1(b)(2)(A) because Stokes was convicted under 18 U.S.C. § 1957, making the adjusted offense level 25.
- A 3-level reduction was applied pursuant to §3B1.2 of the guidelines because the defendant was in between a minor and a minimal participant in the offense.
- A 2-level reduction was applied pursuant to §3E1.1 of the guidelines because the defendant accepted responsibility.
- A 2-level reduction was applied pursuant to §2B1.1 of the guidelines because the offense level overstated the seriousness of the offense as it pertained to Stokes, making the total offense level 18.

The guideline range for an offense level of 18 and Stokes's criminal history category of I was 27-33 months. At the conclusion of the hearing, the Court sentenced defendant to a within-guideline sentence of 30 months of imprisonment on each count, to be served

concurrently, three years of supervised release, restitution in the amount of $6,649,937, and a $400 special assessment (Doc. No. 139, Judgment). On November 11, 2011, Stokes filed a notice of appeal (Doc. No. 147), and filed her motion to vacate, set aside, alter or amend her sentence on April 6, 2012 (Doc. No. 179). At Stokes's request, the Sixth Circuit dismissed her direct appeal on April 24, 2012 (Doc. No. 184). On May 10, 2013, Stokes filed her motions for a compassionate release and for a modification of her restitution (Doc. Nos. 213 and 214, respectively).

II.     **SECTION 2255 MOTION**

A federal prisoner may attack the validity of her sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where she was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

In order to obtain relief under § 2255, a petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Griffin*, 330 F.3d at 736 (quoting *United States v. Davis*, 417 U.S. 333, 346 (1974)).

A court should hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). Thus, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). When (as here) the judge considering the § 2255 motion also presided over the plea, the judge may rely on his or her recollections of the proceedings. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

The Court additionally recognizes the *pro se* status of Stokes. *Pro se* motions receive a comparatively lenient construction by the Court. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

The Court finds that an evidentiary hearing is not warranted in the present case. As the analysis below demonstrates, Stokes's allegations in her motion cannot be accepted as true because they are either conclusively refuted by the record or misguided and unsubstantiated conclusions. *See Arredondo*, 178 F.3d at 782. Moreover, many of the claims made in Stokes's motion are barred by the terms of her plea agreement.

Stokes raises five grounds for relief, all tied to her belief that she received ineffective assistance of counsel at sentencing. The Sixth Circuit has explicitly recognized that a § 2255 motion is the proper vehicle for raising an ineffective counsel claim and that it would not entertain such a claim in a direct appeal; thus, Stokes has properly brought this claim before the Court. *Singleton v. United States*, No. 93-4253, 1994 WL 464245, at *1 (6th Cir. Aug. 26, 1994) (citing *United States v. Carr*, 5 F.3d

8

986, 993 (6th Cir. 1993)); *see also Massaro v. United States*, 538 U.S. 500, 505-06 (2003) (Supreme Court holding that a § 2255 motion is preferable to a direct appeal for deciding an ineffective-assistance claim).

Claims of ineffective assistance of counsel are analyzed under the familiar standard. Under *Strickland*, in order to succeed on such a claim, a defendant must make two showings. First, she "must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 67 (14984). Second, the defendant must show that counsel's deficient performance prejudiced her. *Id*.

Under the first *Strickland* prong, deficient performance means that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, 466 U.S. at 687. At this stage of the analysis, the proper measure of attorney performance is an "objective standard of reasonableness," with reasonableness judged based on the particular case's facts, viewed as of the time of the attorney's conduct. *Id*. at 688-90. Judicial scrutiny of counsel's performance, however, is "highly deferential." *Id*. at 689. Further, a court's focus is on the adequacy of "counsel's actual performance, not counsel's (hindsight) potential for improvement." *Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998) (citation omitted).

In considering the second *Strickland* prong, a defendant is required to show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. However, "[an] error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The

defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A criminal defendant is entitled to effective assistance of counsel during the plea and sentencing process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In the context of guilty pleas, an attorney provides ineffective assistance by performing outside "the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). When a defendant challenges the validity of a plea, the representations of the defendant, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id*. Subsequently-presented conclusory allegations that fly in the face of the record are subject to summary dismissal. *Id*.

The language of Stokes's plea agreement contains a clear and unambiguous waiver of the right to directly or collaterally attack the guilty plea, conviction, and sentence imposed, with few exceptions.[2] The sentence imposed was authorized by the relevant statutory provisions for the offenses of conviction, and was within the recommended range set forth in the sentencing guidelines. Further, Stokes agreed in writing that the parties' recommendations regarding guidelines calculations

---

[2] Stokes reserved the right to appeal only the following: "(a) any punishment in excess of the statutory maximum; (b) any sentence to the extent it exceeds the maximum of the sentencing range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in [her plea] agreement, using the Criminal History Category found applicable by the Court; and (c) the Court's determination of [her] Criminal History Category. Nothing in this paragraph shall act as a bar to [Stokes] perfecting any legal remedies [she] may otherwise have on appeal or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct. (Doc. No. 115, Stokes Plea Agreement, ¶ 20.)

would not be binding on the Court, and that the written plea agreement contained all the terms of the parties' agreement. There were no undisclosed terms, Stokes stated under oath that her guilty plea was knowing and voluntary, and this Court found that the guilty plea was knowing and voluntary.

The Court has reviewed Stokes's claims of ineffective assistance of trial counsel and finds them to be totally without merit.

In her first ground for relief, Stokes claims that her trial counsel was ineffective due to his "failure to effectively and efficiently explain [the] plea agreement." (Doc. No. 179-1 at 1247.) She maintains that, in a prior plea offer, Stokes would have only had to plead guilty to two (unspecified) counts in the indictment, and would have been eligible to receive a split sentence of nine months imprisonment and nine months of home confinement. According to Stokes, "[c]ounsel did not allow defendant to sign the better plea agreement deal that defendant was offered at which point defendant would have served 18 months vs. 30 months for [the] accused crime[s]." (*Id.*)

Stokes has failed, however, to demonstrate that her counsel's advice fell outside the normal range of competence demanded of attorneys in criminal case. Her conclusory representation that her counsel performed deficiently by failing to negotiate a "better deal" falls short of satisfying *Strickland*.[3] *See Kaufman v. Mich. Parole Bd.*, Case No. 05-CV-73933-DT, 2007 WL 1562786, at *13 (E.D. Mich. May 29, 2007) ("[C]ounsel's duty under the Constitution was to negotiate a reasonably favorable plea

---

[3] Indeed, Stokes fails to ever state what about her counsel's advice was deficient. She makes general reference to "legal jargon" contained in the plea that she claims that she did not understand, and that counsel did not "clearly state all the stipulations that were contained within the agreement." (Doc. No. 179-1 at 1247.) Beyond these vague and conclusory allegations, she does not explain what was it about the terms of the plea agreement that she did not fully understand.

agreement, not the best one possible.") (quoting *Abreu v. United States*, 925 F. Supp. 1404, 1411 (N.D. Ind. 1996)); *cf Marion v. United States*, No. 94-5180, 1994 WL 545441, at *2 (6th Cir. Oct. 5, 1994) (Defendant "appears to now believe he might have gotten a better deal by pleading guilty to a different count. This is wholly insufficient to invalidate a plea agreement.")

Stokes "was not forced to enter into that agreement, and counsel's alleged failure to make a better deal does not rise to the level of constitutionally deficient performance." *Stubbs v. United States*, No. 08-4563, 2010 WL 9030350, at *22 (6th Cir. Oct. 20, 2010) (citing *Strickland*, 466 U.S. at 687); *see United States v. Garfolo*, 425 F. App'x 460, 462 (6th Cir. 2011) (rejecting the notion that prejudice is established by showing "that a better plea negotiation would have allowed counsel to advocate for a lower sentence"). Further, the plea colloquy demonstrates that Stokes knew that her guilty plea could result in a guidelines calculation in line with that which was ultimately adopted by this Court. *See, e.g., Reed v. United States*, Case No. 06 CR 290, 2008 WL 3932150, at *2 (N.D. Ohio Aug. 20, 2008) (rejecting the argument that counsel was deficient for failing to achieve a "better deal" where plea colloquy demonstrated defendant was aware that her plea would result in the imposition of a mandatory minimum sentence).

Moreover, to the extent she argues that her counsel should have taken the alleged more favorable prior deal, there is nothing in the record to suggest that this alleged prior offer would have still been available on the eve of trial, and without an agreement to cooperate against co-defendants. *See, e.g., United States v. Kelly*, Civil Action No. 2:12-7226-DCR, 2012 WL 4955193 (E.D. Ky. Oct. 17, 2012). The only prior

plea offer of record was expressly rejected by Stokes in open court on August 18, 2011, at which time she advised the Court that she wished to proceed to trial (Doc. No. 230, Hearing Transcript at 2464-71 and Court's Ex. 1)—a position that she had steadfastly maintained throughout the case until she entered her plea on September 1, 2012.

Stokes's reliance on *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and *Laffler v. Cooper*, __ U.S. __,132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), is misplaced. In *Frye*, the Supreme Court recognized that the right to effective assistance of counsel extends to the plea bargaining process. A defendant may assert a cognizable claim of ineffective assistance of counsel if his attorney fails to inform him of a plea offer, provided the defendant is able to demonstrate prejudice. 132 S. Ct. at 1408-09. Stokes does not allege that her counsel failed to convey any plea offers, and her generalized claims that the plea agreement contained "legal jargon" that she did not fully understand are belied by her representations at the sentencing that she understood each and every provision in the plea agreement. *See id.* at 1406 ("Before a guilty plea is entered the defendant's understanding of the plea and its consequences can be established on the record. This affords the [government] substantial protection against later claims that the plea was the result of inadequate advice."); *see generally*, *Arredondo*, 178 F.3d at 782. Further, as stated above, Stokes fails to demonstrate that any more favorable offer would have been available on the eve of trial. *See Frye*, 132 S. Ct. at 1410.

In *Laffler*, the Court held that a claim of ineffective assistance can result from incorrect advice given by an attorney in deciding whether to accept or reject a plea offer. Under such circumstances, a defendant must establish that there is a reasonable probability that, but for the erroneous advice, the original plea bargain containing a less

13

severe penalty would have been accepted by the defendant and the court. *Id.* at 1385. Stokes has not pointed to any erroneous advice that prevented her from accepting a more favorable deal.[4] Stokes's first ground for relief is denied.

In her second ground for relief, Stokes argues that trial counsel was ineffective for failing to "provide a forensic accounting to support and prove financial gain and or benefit." (Doc. No. 179-1 at 1248.) She argues that she only received $86,974.61 from the 6.7 million in proceeds from the mortgage fraud scheme. (*Id.*) This argument fails because a forensic accounting would not have changed the Court's determination of loss. While defense counsel argued that the loss should be capped at the amount directly attributable to Stokes, the Court applied binding Sixth Circuit authority that provides that each co-conspirator is responsible for all losses suffered by the victims that were directly and proximately caused by the conspiracy. *See United States v. Williams*, 612 F.3d 500, 512 (6th Cir. 2010). Thus, an accounting breaking out the losses attributable to Stokes would not have changed that result. Moreover, while the Court applied the total amount from the conspiracy to determine loss, it also took into account, as Stokes's counsel argued, the fact that the offense level overstated the seriousness of the offense as to Stokes in departing downward by two additional levels. (Doc. No. 177 at

---

[4] Stokes also suggests that her trial counsel was ineffective because, after she entered her guilty plea, counsel erroneously advised her that she would likely only receive 18 months of imprisonment. However, "as a general rule, a miscalculation or erroneous sentence estimation by defense counsel is not, by itself, a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *Spearman v. United States*, 860 F. Supp. 1234, 1243 (E.D. Mich. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *see also Lake v. United States*, 465 F. App'x 33, 35 (2d Cir. 2012) ("miscalculation regarding the Government's willingness to negotiate a more favorable deal or restore its initial plea offer, represent, at best, strategic errors that are 'virtually unchallengeable'") (quoting *Strickland*, 466 U.S. at 690).

14

1171.) Because Stokes can demonstrate neither deficient performance nor prejudice, she is not entitled to relief on this ground.

In her third ground, Stokes claims that her counsel was ineffective for failing to provide case law and code sections to support a sentencing guidelines base level of 10, in light of her minimal role in the conspiracy. While defense counsel argued, both in the sentencing memorandum and at the sentencing hearing, that Stokes's minimal role should have warranted a base level of 10, the Court rejected the substantial downward departure or downward variance requested. Instead, the Court departed downward by three levels to reflect the fact that defendant was between a minor and a minimal participant in the conspiracy. (*Id*.) Again, defense counsel made the argument, and Stokes received the benefit of the departure. She cannot, therefore, demonstrate deficient performance or prejudice; especially where she fails to identify any case authority that her counsel could have relied upon to achieve an even more favorable result.

Finally, in her fourth ground, Stokes argues that counsel was deficient for failing to provide case law to support a downward departure based on her violent childhood and family circumstances. Again, Stokes fails to identify any case law that would have altered the sentence. *See also United States v. Rossi*, 422 F. App'x 425, 435 (6th Cir. 2011) (rejecting practice of citing other court's sentencing decisions to determine sentencing disparities because doing so "'opens the door to endless rummaging by lawyers through sentences in other cases, each side finding random examples to support a higher or lower sentence, as their clients' interests dictate'") (quoting *United States v. Thomas*, 395 F. App'x 168, 175 (6th Cir. 2010)). Additionally, Stokes's counsel made these arguments in defendant's sentencing memorandum, repeated them at the

15

sentencing hearing, and the Court considered the arguments. The fact that the Court determined that neither her childhood circumstances nor her family responsibilities warranted a variance or departure does not establish ineffectiveness. (Doc. No. 177, Sentencing Hearing. at 1168-70 and 1182.)

None of the grounds asserted by Stokes in her application support relief pursuant to 28 U.S.C. § 2255.[5] Accordingly, the Court DENIES her motion to vacate or set aside the judgment of conviction and sentence.

### III.     MOTION FOR COMPASSIONATE RELEASE

On May 10, 2013, the Court received a document from defendant Stokes styled "Motion for Compassionate Release." In her motion, Stokes represents that she must care for her grandmother, whose health is failing, complete her education, and seek mental health counseling. She now requests early release to attend to these matters.

The authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748-49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 858 (6th Cir. 2001)). The sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009).

Section 3582 of Title 18 of the United States Code provides "The court may not modify a term of imprisonment once it has been imposed except that . . . the

---

[5] Stokes does not move for the appointment of counsel to represent her for this post-conviction proceeding, and, in any event, the Court would not find any such appointment appropriate. Congress mandates the appointment of counsel in § 2255 proceedings only where the defendant faces a capital sentence—which Stokes does not. *See* 18 U.S.C. § 3599(a)(2). In non-capital § 2255 motions, indigent defendants have a right to appointed counsel only when "the interest of justice so requires." 18 U.S.C. § 3006A(a)(2). Here, the Court finds that because the issues presented in Stokes' § 2255 motion are straightforward, the interests of justice do not require the appointment of counsel.

court, *upon motion of the Director of the Bureau of Prisons*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) . . . ." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). In the absence of a motion by the Director of the Bureau of Prisons to reduce defendant's term of imprisonment, this Court lacks the jurisdiction under § 3582 to grant the relief Stokes requests. *See Engle v. United States*, 26 F. App'x 394, 397 (6th Cir. 2001) (district courts lack "jurisdiction to *sua sponte* grant compassionate release") (citing § 3582); *United States v. Crowe*, 430 F. App'x 484, 485 (6th Cir. 2011) (a district court lacks the authority to review a decision by the BOP to not seek a compassionate release). The Director of the Bureau of Prisons has not filed any such motion and, therefore, the Court lacks jurisdiction to grant Stokes's motion pursuant to this provision.[6]

Section 3582 also allows a court to modify "an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure[.]" § 3582(c)(1)(B). Rule 35, in turn, permits a court to correct within fourteen days after sentencing, "a sentence that resulted from arithmetical, technical, or other clear error[,]" or to reduce a sentence for "substantial assistance," upon the government's motion. Fed. R. Crim. P. 35. Rule 35 relief is not

---

[6] Even if this Court had jurisdiction to consider a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), the Court would find that modification is inappropriate because Stokes is not at least 70 years of age and has not served at least 30 years in prison, *see* § 3582(c)(1)(A)(ii), and her family circumstances—though unfortunate—do not constitute "extraordinary and compelling reasons" to justify a reduction. *See* § 3582(c)(1)(A)(i).

applicable, and Stokes has failed to identify any statute that would entitle her to a sentence reduction.

Finally, § 3582(c)(2) permits a reduction of a sentence of imprisonment when the sentence was based upon a sentencing range that has subsequently been lowered by the Sentencing Commission in certain circumstances. As with the other provisions of § 3582, this section of the statute is not applicable herein.

On the basis of the foregoing, Stokes's motion to reduce her sentence is DENIED.

### IV. MOTION TO AMEND RESTITUTION

The restitution order provides that Stokes "shall pay restitution in the amount of $6,649,937 through the Clerk of the U.S. District Court. Restitution is due and payable immediately." (Doc. No. 139 at 1029.) The order further provides, in relevant part, that "[t]he defendant shall pay 25% of defendant's gross income per month, through the Federal Bureau of Prisons Inmate Financial Responsibility Program." (*Id.*) The Court previously denied a motion by Stokes to modify the restitution order to permit monthly payments of $20.00. (Doc. No. 172 and Minute Order, dated January 31, 2012.)

In her final motion, Stokes requests that the restitution order be modified to include the word "prison" in front of the provision calling for monthly payments of 25% of her gross income. (Doc. No. 214.) In support of this motion, she insists that the current restitution payment terms are placing a financial burden on her and her family.

A sentence that imposes an order of restitution is a final judgment, which under 18 U.S.C. § 3664(o), may only be altered in certain limited ways. Relevant to Stokes's motion is § 3664(k), which provides for an adjustment of the payment schedule

18

upon a finding of a "material change in the defendant's economic circumstances[.]" 18 U.S.C. § 3664(k). While Stokes details the hardships that prison life entails, including the expenses associated with purchasing prison commissary items, she fails to demonstrate a material change in her economic circumstances that would warrant an adjustment. Moreover, she fails to identify any change in her circumstances from the date in which the Court denied her last motion to modify restitution.

Defendant's motion to amend the restitution order is DENIED.

V. **CONCLUSION**

For all of the foregoing reasons, defendant Stokes's motions to vacate or set aside the sentence, to issue a compassionate release, and to modify restitution are DENIED. The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: October 9, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**